IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

MOTHERSHIP FLEET COOPERATIVE, a Washington nonprofit corporation, on its own behalf and on behalf of its members; JAMES MIZE, in his capacity as designated representative of Mothership Fleet Cooperative for purposes of 50 C.F.R. § 679.66(a)(1)(iii); MEDDAR CORPORATION, a Washington corporation; and F/V WESTERN DAWN L.L.C., a Washington limited liability company,

Plaintiffs,

v.

WILBUR ROSS, JR., Secretary of Commerce for the United States; NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION; and NATIONAL MARINE FISHERIES SERVICE,

Defendants.

Case No. 3:18-cv-00303-TMB

**ORDER ON DEFENDANTS' MOTION TO DISMISS (DKT. 18)**

## I. INTRODUCTION

The matter comes before the Court on Defendants Wilbur Ross, Jr., National Oceanic and Atmospheric Administration ("NOAA"), and National Marine Fisheries Service's ("NMFS") Motion to Dismiss and Memorandum in Support ("Motion to Dismiss").[1] Defendants move to Dismiss the Complaint[2] by Plaintiffs Mothership Fleet Cooperative, James Mize, Meddar Corporation, and F/V Western Dawn L.L.C. on the basis that Plaintiffs' claims are moot and time-

---

[1] Dkt. 18 (Motion to Dismiss).

[2] Dkt. 1 (Complaint).

1

barred.³ The Motion to Dismiss was fully briefed.⁴ Plaintiffs requested oral argument and a hearing was held on November 13, 2019.⁵ Upon consideration of the Parties' briefings, oral arguments, and court records, and for the reasons stated below, Defendants' Motion to Dismiss at docket 18 is **GRANTED**.

## II. BACKGROUND

Plaintiffs represent or own catcher vessels eligible to harvest pollock for processing by motherships in an offshore component of the pollock fishery ("mothership sector") of the American Fisheries Act ("AFA").⁶ Defendants are federal agents and agencies tasked with overseeing and regulating the nation's fisheries.⁷

*A. Statutory Background*

In 1976, Congress enacted the Magnuson–Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. §§ 1801–1884, "to take immediate action to conserve and manage the fishery resources found off the coasts of the United States," among other objectives.⁸ In 2007, Congress amended the MSA to, in part, provide that the Secretary of Commerce "is authorized and shall collect a fee to recover the actual costs directly related to the management and enforcement of any limited access privilege program."⁹ A "limited access privilege" was then

---

³ Dkt. 18.

⁴ Dkts. 18, 20 (Opposition), and 23 (Reply).

⁵ Dkts. 20, 26 (Minute Entry).

⁶ Dkt. 1 at 3.

⁷ Dkt. 18 at 3.

⁸ 16 U.S.C. § 1801(b)(1).

⁹ 16 U.S.C. § 1854(d)(2)(A)(i) (amended 2007).

defined as "a Federal permit, issued as part of a limited access system under section 1853a of this title to harvest a quantity of fish expressed by unit or units representing a portion of the total allowable catch of the fishery that may be received or held for exclusive use by a person."[10]

On January 5, 2016, Defendant NMFS published a final rule in the Federal Register regarding the cost recovery authority under the MSA ("2016 Final Rule").[11] The 2016 Final Rule designated the AFA pollock fishery a limited access privilege program. As such, the mothership sector of the pollock fishery under the AFA—*i.e.* Plaintiffs—was held responsible for the payment of annual MSA recovery fees.[12]

B. *Factual and Procedural Background*

Plaintiffs allege that on or about November 27, 2018, Plaintiff James Mize received, in his capacity as the designated representative of the Mothership Fleet Cooperative, a 2018 AFA Program Fee Liability Summary directed to the Mothership Cooperative.[13] Plaintiffs further allege that, on November 30, 2018, Defendants published a notice in the Federal Register with the 2018 cost recovery fee amount for the mothership sector but failed to disclose all information and calculations Defendants were required to perform to determine that fee amount.[14]

---

[10] 16 U.S.C. § 1802(26) (amended 2007)

[11] Fisheries of the Exclusive Economic Zone Off Alaska; Bering Sea and Aleutian Islands Management Area; New Cost Recovery Fee Programs, 81 Fed. Reg. 150, 152 (Jan. 5, 2016).

[12] *Id.*

[13] Dkt. 1 at 8.

[14] *Id.* at 8–9.

3

On December 26, 2018, Plaintiffs filed the instant Complaint challenging Defendants' authority to collect cost recovery fees from the mothership sector.[15] Plaintiffs raise two claims for relief, as follows:

1. Defendants do not have the authority to collect cost recovery fees from Plaintiffs because the mothership sector is not a limited access privilege program;[16] and

2. Even if Defendants were authorized to collect the fees, they did not provide any basis supporting the amount of the cost recovery fee assessed for 2018.[17]

Based on these two claims, Plaintiffs request that the Court issue a judicial declaration that the mothership sector of the AFA pollock fishery is not a limited access privilege program and the MSA's cost recovery regulations are inapplicable to the mothership sector.[18] Plaintiffs further seek a judicial declaration setting aside Defendants' cost recovery regulations to the extent they apply to the mothership sector and requiring Defendants to refund the 2018 fee as well as all cost recovery fees previously collected from Plaintiffs.[19] Finally, Plaintiffs request a court order awarding them costs of suit, other expenses, attorneys' fees, and other and further relief as the Court may deem necessary.[20]

---

[15] Dkt. 1.

[16] *Id.* at 10–11.

[17] *Id.* at 11–12.

[18] *Id.* at 12.

[19] *Id.* at 12–13.

[20] *Id.* at 13.

On June 20, 2019, Defendants filed the Motion to Dismiss.[21] Defendants argue that Plaintiffs' claims with respect to the 2018 cost recovery fee are moot because Defendants refunded the 2018 fee and sent Plaintiffs a letter committing to "permanently suspend collection of cost recovery fees from the Mothership Fleet Cooperative under the current regulations."[22] As for Plaintiffs' request for the refund of prior cost recovery fees, Defendants argue that Plaintiffs failed to sufficiently plead a claim for such fees and, in any event, the claim is time-barred.[23] Accordingly, Defendants conclude that the Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[24]

Plaintiffs filed their Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition") on July 18, 2019.[25] Plaintiffs acknowledge that Defendants refunded the 2018 fee and issued the letter permanently suspending further cost recovery fees.[26] However, Plaintiffs argue that Defendants' voluntary cessation does not render the Complaint moot because Defendants' actions "do not afford the *complete relief* Plaintiffs are entitled to in this action . . . ."[27] Plaintiffs specifically argue that Defendants' letter at docket 18-2 "is not the equivalent of a judicial decree from this Court declaring the 2016 Rule unlawful and setting it aside as applied to

---

[21] Dkt. 18.

[22] *Id.* at 9–11. *See* Dkts. 18-1 (Email regarding refund) and 18-2 (Letter).

[23] *Id.* at 11–15.

[24] *Id.* at 15.

[25] Dkt. 20.

[26] *Id.* at 2.

[27] *Id*. at 3 (emphasis in original).

5

the mothership sector."[28] Plaintiffs also argue that, because their challenge to the 2016 Final Rule is timely and meritorious, the Court has the authority to grant Plaintiffs complete relief, including ordering the refund of monies wrongfully collected pursuant to the allegedly invalid 2016 Rule.[29] Plaintiffs further argue that, to the extent their claim for the 2016 and 2017 cost recovery fee refund has not been adequately pleaded, they should be granted leave to amend the Complaint.[30] Finally, Plaintiffs contend that their attorneys' fees, expenses, and costs of suit remain a "present controversy."[31] In conclusion, Plaintiffs believe that the Motion to Dismiss should be denied in its entirety because there is additional relief the Court may grant Plaintiffs, notwithstanding Defendants' voluntary actions.

On August 6, 2019, Defendants filed their Reply in Support of Their Motion to Dismiss ("Reply").[32] Defendants reiterate that their voluntary refund of the 2018 cost recovery fee and commitment to suspend collection of further cost recovery fees from Plaintiffs under the 2016 Final Rule moot the instant action.[33] Defendants also reallege that Plaintiffs' claims and requested relief for the cost recovery fees paid in 2016 and 2017 are time-barred because they were paid under separate federal actions subject to separate judicial review.[34] Defendants further argue that Plaintiffs should not be granted leave to amend the Complaint to plead additional facts concerning

---

[28] *Id.* at 8.

[29] *Id.* at 10–14.

[30] *Id.* at 15.

[31] *Id.* at 9, 15–16.

[32] Dkt. No. 23.

[33] *Id.* at 3–6.

[34] *Id.* at 6–10.

the 2016 and 2017 cost recovery fees because they are time-barred and amendment would be futile.[35] As for Plaintiffs' requests for attorneys' fees, Defendants contend that the Equal Access to Justice Act ("EAJA") and Federal Rule of Civil Procedure 54 allow parties to seek fees within a certain time after final judgment—which has now passed.[36] For those reasons, Defendants believe the case should be dismissed.[37]

### III. LEGAL STANDARD

*A. Federal Rule of Civil Procedure 12(b)(1)*

Defendants have moved to dismiss the Complaint, in part, because they argue the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "[I]n reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, [courts] take the allegations in the plaintiff's complaint as true."[38] "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence."[39] "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."[40] Moreover, a Rule 12(b)(1) jurisdictional attack may be facial or factual, depending on whether the challenger asserts that the complaint, on its face, is insufficient to invoke federal jurisdiction or whether the challenger

---

[35] *Id.* at 12–13.

[36] *Id.* at 13 (quoting 28 U.S.C. § 2412(d)(1)(B) and Fed. R. Civ. P. 54(d)(2)(B)).

[37] *Id.* at 15.

[38] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

[39] *Rattlesnake Coal. v. U.S. Envtl. Prot. Agency*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007). *See also Alaska v. Kerry*, 972 F. Supp. 2d 1111, 1120 (D. Alaska 2013); *Alaska v. Jewell*, No. 4:13-cv-00034-SLG, 2014 WL 3778590, at *2 (D. Alaska July 29, 2014).

[40] *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003).

7

disputes the truth of the allegations themselves.[41] When faced with a challenge to its subject matter jurisdiction under Rule 12(b)(1), the court must resolve that issue before determining whether the complaint states a claim under Rule 12(b)(6).[42]

    *B. Federal Rule of Civil Procedure 12(b)(6).*

Defendants also move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted.[43] In order to survive a motion to dismiss, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief,"[44] and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[45] In ruling on a 12(b)(6) motion, the Court must "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party."[46]

In determining whether a complaint pleads sufficient facts to cross "the line between possibility and plausibility," "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements" do not suffice.[47] However, a plaintiff need not plead "all facts necessary

---

[41] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 228 F.3d 1214, 1242 (9th Cir. 2000)).

[42] *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

[43] Dkt. 18 at 8–9.

[44] Fed. R. Civ. P. 8(a)(2).

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[46] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (quoting *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)).

[47] *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 557).

to carry" his or her burden.[48] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[49] So long as plaintiffs meet this standard of plausibility, their claim survives a 12(b)(6) motion even if defendants present a similarly plausible description of the disputed events.[50] "A dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[51]

Generally, the court should not consider materials outside of the pleadings when ruling on a motion to dismiss for failure to state a claim.[52] Courts may consider materials submitted with or relied on by the pleading at issue where the complaint "necessarily relies" on those documents and their authenticity is not disputed.[53]

## IV. ANALYSIS

Plaintiffs raise two claims for relief: (1) Defendants do not have the authority to collect cost recovery fees from Plaintiffs because the mothership sector is not a limited access privilege program; and (2) even if Defendants were authorized to collect the fees, they did not provide any basis supporting the amount of the cost recovery fee assessed for 2018.[54] Plaintiffs argue that in

---

[48] *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *rev'd on other grounds* 563 U.S. 713 (2011).

[49] *Iqbal*, 556 U.S. at 679 (citation omitted).

[50] *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).

[51] *Arpin*, 261 F.3d at 923 (quoting *Pillsbury, Madison, & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).

[52] *Id.* at 925 (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

[53] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citations omitted).

[54] Dkt. 1 at 10–12.

9

either circumstance, Defendants' collection of the 2018 cost recovery fee violates the MSA and the Administrative Procedure Act ("APA"), is arbitrary, capricious, an abuse of discretion, and not in accordance with the law, and is in excess of statutory jurisdiction, authority or limitations, and short of statutory right.[55] As such Plaintiffs seek declaratory and injunctive relief, as well as the refund of any and all previously collected cost recovery fees and costs of suit and attorneys' fees.[56] The Court will address whether dismissal is proper for each of Plaintiffs' arguments in turn.

A. *Whether Plaintiffs' Challenge of the 2016 Final Rule and 2018 Cost Recovery Fee Is Moot Because Defendants Returned the 2018 Cost Recovery Fee and Committed to Suspend Collection of Future Recovery Fees*

Defendants have moved to dismiss the Complaint, in part, because they allege this Court lacks jurisdiction since Plaintiffs' claims were rendered moot by Defendants' refund of the 2018 cost recovery fee and commitment to permanently suspend collection of cost recovery fees from the mothership sector.[57] Plaintiffs oppose by arguing that Defendants have not met their heavy burden and that Defendants' voluntary actions leave further relief for the Court to grant.[58]

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "'Controversies."[59] To satisfy the case–and–controversy requirement, "an actual, ongoing

---

[55] *Id.* at 12.

[56] *Id.*

[57] Dkt. 18 at 9. Here, Defendants have brought a facial attack by asserting that the allegations contained in the Complaint are insufficient on their face to invoke federal jurisdiction. Although the Parties have introduced materials outside the pleadings, there does not appear to be a dispute over the factual allegations. As a result, the Court has reviewed the supporting materials and accept certain factual allegations as true. *See Wolfe*, 392 F.3d at 362.

[58] Dkt. 20 at 7–8.

[59] U.S. Const. art. III, § 2, cl. 1. *See also Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 861 (9th Cir. 2017).

controversy [must] exist at all stages of federal court proceedings."[60] Without a present controversy as to which effective relief can be granted, a case becomes moot and the court is divested of jurisdiction.[61]

There are exceptions to the mootness doctrine.[62] A defendant's "voluntary cessation of the challenged conduct does not ordinarily render a case moot because dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."[63] However, voluntary cessation may nonetheless yield mootness if "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[64] A government entity is presumed to act in good faith when it changes policies and asserts mootness based on such a change.[65] It is the government's burden to show that the challenged conduct "cannot reasonably be expected to start up again."[66]

In *Rosebrock v. Mathis*, the Ninth Circuit considered five factors to determine whether a voluntary policy change, though not rooted in statute, ordinance, or regulation, may moot a case.[67] The Court of Appeals "indicated that mootness is more likely if (1) the policy change is evidenced

---

[60] *Bayer*, 861 F.3d at 862 (internal quotations and citations omitted).

[61] *See id.* (internal quotations and citations omitted), *Jewell*, 2014 WL 3778590, at *2.

[62] *See In re Burrell*, 415 F.3d 994, 998–999 (9th Cir. 2005) (explaining the four major exceptions to the mootness doctrine).

[63] *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

[64] *Id.* at 971 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

[65] *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010).

[66] *Rosebrock*, 745 F.3d at 971 (citing *White v. Lee*, 227 F.3 1214, 1243–44 (9th Cir. 2000)).

[67] *Id.* at 972.

by language that is broad in scope and unequivocal in tone; (2) the policy change fully addresses all the objectionable measures that the Government officials took against the plaintiffs in the case; (3) the case in question was the catalyst for the agency's adoption of the new policy; (4) the policy has been in place for a long time when we consider mootness; and (5) since the policy's implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff."[68] Ultimately, the question is whether the new policy can be easily abandoned or altered in the future and whether the government has met its heavy burden of proof.[69]

Here, the Court finds that Defendants' actions and repeated, express commitments to the new policy render the Plaintiffs' claims moot. At oral argument, Plaintiffs referenced additional Ninth Circuit authority[70] and took the position that there was no evidence on the record to show how Defendants reached their decision to cease collection from the mothership sector or whether any procedural safeguards would protect their decision from reversal or abandonment. The Court disagrees.

First, the May 28, 2019 letter memorializing Defendants' return of the 2018 cost recovery fees collected from Plaintiffs and Defendants' commitment to "permanently suspend collection of cost recovery fees" from Plaintiff clearly stated a policy change using language broad in scope and

---

[68] *Id.* (internal quotations and citations omitted).

[69] *Id*. (internal quotations and citations omitted). *See also Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018) ("Our case law teaches that voluntary change in official stance or behavior moots an action only when it is absolutely clear to the court, considering the procedural safeguards insulting the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur.") (internal quotations omitted).

[70] Dkt. 25 (Additional Authorities).

unequivocal in tone.[71] In addition, Defendants restate in the Motion to Dismiss that they have voluntarily "commit[ted] to permanently cease cost recovery efforts under the 2016 Rule as applied to the mothership sector."[72] Then, in Defendants' Reply, they recognize that this Court, in *CP Salmon v. Ross*,[73] had found the 2016 Final Rule invalid with respect to the catcher/processor sector and Defendants acknowledge that the mothership sector is similarly situated to the catcher/processor sector.[74] Moreover, in light of this Court's precedent and its application to the mothership sector, Defendants assert that the "annual fee collection from the mothership sector cannot reasonably be expected to recur."[75] Finally, at oral argument, Defendants were questioned by the Court and in response made assurances that any reversal of the letter's commitment would be "very, very, very unlikely" in light of their prior statements on the record. The repeated emphasis of Defendants' policy change throughout this litigation makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[76]

Second, the May 28, 2019 letter addressed the challenged conduct and offered relief equivalent to the declaratory and injunctive relief Plaintiffs seek in their Complaint.[77] Plaintiffs seek a court order declaring the mothership sector is not a limited access privilege program, setting aside the 2016 Final Rule as applied to the mothership sector, and refunding the cost recovery fees

---

[71] *See* Dkt. 18-2.

[72] Dkt. 18 at 10.

[73] Case No. 3:16-cv-00031-TMB, 2018 WL 2327036 (D. Alaska Mar. 30, 2008).

[74] Dkt. 23 at 5–6.

[75] *Id.* at 6.

[76] *See Rosebrock*, 745 F.3d at 971 (quoting *Friends of the Earth*, 528 U.S. at 189).

[77] *Compare* Dkt. 18-2 *with* Dkt. 1 at 12–13.

13

collected under the 2016 Final Rule.[78] Defendants refunded the 2018 fee, committed to permanently suspending collection of future fees, and explicitly recognized that Plaintiffs are "similarly situated to the plaintiffs in *CP Salmon v. Ross*, Case No. 3:16-cv-00031-TMB" in that Plaintiffs here were not issued a "permit" under the Court's *CP Salmon* ruling.[79] On this point, Plaintiffs contend that the letter "is simply *not the equivalent* of a judicial decree."[80] However, Defendants' voluntary refund and letter effectuated the same desired results as would a judicial decree: Plaintiffs recovered their 2018 payment and the 2016 Final Rule will no longer be applied to the mothership sector. Consequently, Defendants' actions afforded Plaintiffs the requested relief without a judicial declaration.

Third, Defendants also acknowledged at oral argument that this case was, in part, the catalyst for the policy change. The refund and May 28, 2019 letter were issued to Plaintiffs after their Complaint was filed and served as the basis for Defendants' Motion to Dismiss. Furthermore, Defendants voluntarily dismissed their appeal of this Court's *CP Salmon v. Ross* decision.[81] The record indicates that Defendants adopted the new policy as a result of the present litigation and the Court's decision in *CP Salmon v. Ross*.

Finally, the short time frame since Defendants' policy changed may weigh against mootness under the fourth and fifth *Rosebrock* factors. However, Defendants represented at oral argument that they had already drafted the 2019 fee notice and it does not reference the mothership

---

[78] Dkt. 1 at 12–13.

[79] Dkt. 18-2 at 2.

[80] Dkt. 20 at 4.

[81] *See* Case No. 18-35741, 2019 WL 1076853, at *1 (9th Cir. Jan. 30, 2019).

sector.⁸² Defendants argued that excluding Plaintiffs from the 2019 fee collection is action consistent with their commitment to the change in policy. Again, Defendants' policy change remains clear and unequivocal. Defendants will not collect future cost recovery fees from Plaintiffs under the 2016 Final Rule.

In considering the *Rosebrock* factors, the Court finds that Defendants have met their burden and Plaintiffs' request for declaratory and injunctive relief is moot.⁸³ It is not reasonably likely that Defendants will attempt again to collect a cost recovery fee under 2016 Final Rule from Plaintiffs. Furthermore, Defendants, as government entities, are presumed to act in good faith. In the event Defendants modify their stance on the 2016 Final Rule as applied to Plaintiffs, Plaintiffs will be well-armed by this record in pursuit of a renewed action.⁸⁴

> B. *Whether Plaintiffs' Attempts to Recover Past Fees Collected Under the 2016 Final Rule and Claims for Costs of Suit and Attorneys' Fees Present a Live Issue to Satisfy the Case–and–Controversy Requirement*

Because Defendants challenge the Court's jurisdiction, it is now Plaintiffs' burden to assert jurisdiction exists.⁸⁵ Plaintiffs argue that Defendants' voluntary cessation does not render their challenge moot because Defendants "do not afford the *complete relief* Plaintiffs are entitled

---

⁸² *See* Fisheries of the Exclusive Economic Zone Off Alaska; Bering Sea and Aleutian Islands Management Area; Cost Recovery Programs, 84 Fed. Reg. 65,357 (Nov. 27, 2019).

⁸³ Because the Court finds that Plaintiffs' challenge of the 2016 Final Rule and 2018 cost recovery fee is moot, the Court declines to decide Plaintiffs' second ground for relief: whether Defendants properly supported their calculations of the 2018 fee.

⁸⁴ *See Rosebrock*, 745 F.3d at 974 (recognizing that there are no procedural safeguards in place for preventing the government from changing course but finding the government met its heavy burden and the challenged conduct is not reasonably likely to recur). *See also Carey v. Inslee*, 364 F. Supp. 3d 1220, 1227 (W.D. Wash. 2019) (noting that it would be "highly illogical" for a government agency to revert its practices when doing so would invite litigation).

⁸⁵ *Rattlesnake Coal.*, 509 F.3d at 1102 n.1 (9th Cir. 2007).

to in this action."[86] Specifically, Plaintiffs argue that the matter of past fees collected under the 2016 Final Rule is still at issue and Plaintiffs' request for attorneys' fees remains to be adjudicated.[87] Defendants contend that Plaintiffs failed to plead sufficient facts to challenge the past fees—*i.e.* the cost recovery fees collected in 2016 and 2017—but amendment is futile because any such challenge is now time-barred.[88] Defendants also contend that Plaintiffs' claims for attorneys' fees and costs do not prevent dismissal for mootness.[89]

1. <u>Plaintiffs' Request for Cost Recovery Fees Collected in 2016 and 2017 Is Time-Barred</u>

Plaintiffs argue that because the 2016 Final Rule was inapplicable to the mothership sector, Defendants "have no lawful basis to retain *any* of the cost recovery fees they previously collected from Plaintiffs, *no matter when the collection of such fees occurred*."[90] Defendants assert that Plaintiffs did not plead sufficient facts related to the 2016 and 2017 cost recovery fees.[91] Defendants further argue that amendment to include more allegations related to the 2016 and 2017 fees would be futile because those cost recovery fees were paid under separately reviewable federal actions, and the time to challenge those payments has passed.[92]

---

[86] Dkt. 20 at 3.

[87] *Id.* at

[88] Dkt. 18 at 11–15.

[89] Dkt. 23 at 13–15.

[90] Dkt. 20 at 5 (emphasis in original).

[91] Dkt. 18 at 11.

[92] Dkt. 23 at 6–10.

The MSA permits judicial review of agency actions "if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register."[93] An "action" is defined as "actions that are taken by the Secretary under regulations which implement a fishery management plan."[94] "The conjunctive 'and' . . . indicates that both regulations *and* actions are reviewable in a timely filed petition."[95] As such, under 16 U.S.C. § 1855(f), a plaintiff's suit filed within 30 days of the publication of an "action" is timely to challenge both the action and underlying regulation, even if the regulation is decades old.[96]

In this case, Plaintiffs' argument that §1855(f) is silent on "actions *not challenged* within 30 days" is not persuasive.[97] Plaintiffs construe the APA and § 1855(f) to leave open the possibility of challenging actions after 30 days if the underlying regulation is subsequently vacated.[98] Their reading of § 1855(f) is counterintuitive in light of the explicit 30-day deadline. There is no dispute that the publication of a cost recovery fee constitutes an "action" and that the 2016 Final Rule is a regulation under which the fees are collected.[99] Therefore, Plaintiffs filed a timely challenge to the 2018 cost recovery fee *and* the 2016 Final Rule.[100]

---

[93] 16 U.S.C. § 1855(f)(1).

[94] *Id.* at § 1855(f)(2).

[95] *Oregon Trollers Ass'n v. Gutierrez*, 452 F.3d 1104, 1113 (9th Cir. 2006) (emphasis in original).

[96] *Id.* at 1114.

[97] Dkt. 20 at 11.

[98] *Id.*

[99] *Id.* at 9.

[100] *Id.*

However, if the publication of the 2018 cost recovery fee is by itself an action, then by that logic, the publications of the 2016 and 2017 cost recovery fees are separate actions independent of each other and of the 2018 cost recovery fee. Plaintiffs could have brought this action within 30 days of the publication of the 2016 cost recovery fee or within 30 days of the publication of the 2017 cost recovery fee. However, Plaintiffs did not do so and the 30-day statute of limitations elapsed. Because any challenges to the 2016 and 2017 fees are now time-barred, it would be futile to allow Plaintiffs to amend the Complaint. Therefore, Plaintiffs' claims to the past collected fees do not present a live controversy to establish jurisdiction in this Court.

2. Plaintiffs' Request for Attorneys' Fees Does Not Circumvent Mootness

Plaintiffs also argue that their request for an award of attorneys' fees, expenses, and costs pursuant to EAJA constitutes a still-pending issue that Defendants' voluntary cessation did not remedy.[101] Defendants rebut by stating language from EAJA and Federal Rule of Civil Procedure 54(d) that set forth the timeframes for parties to pursue fee awards *after* entry of final judgment.[102]

It is well-established that attorneys' fees and legal costs standing alone are insufficient to avoid mootness.[103] "Rather, a case or controversy sufficient to confer Article III jurisdiction exists only when succeeding in the litigation will afford 'the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself.'"[104] In this case, Plaintiffs may not rely on their preemptive request for attorneys' fees and costs to keep their case alive. Plaintiffs may appropriately move for attorneys' fees under EAJA and the Federal Rule of Civil Procedure

---

[101] *Id.* at 15–16.

[102] Dkt. 23 at 13.

[103] *Bayer*, 861 F.3d 853, 866-67 (9th Cir. 2017) (quoting *Steel Co.*, 523 U.S. at 107).

[104] *Id.* at 867 (quoting *Steel Co.*, 523 U.S. at 107).

after entry of judgment.[105] Even then, Plaintiffs must show that they are entitled to attorneys' fees as the prevailing party.[106] At this point, Plaintiffs' request for attorneys' fees and costs do not meet the case-and-controversy requirement to avoid dismissal for mootness.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss at docket 18 is **GRANTED** and the case is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 10th day of December, 2019.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[105] *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application . . . which shows that the party is a prevailing party"); Fed. R. Civ. P. 54(d)(2) ("A claim for attorney's fees and related nontaxable expenses must be made by motion . . . filed no later than 14 days after the entry of judgment").

[106] *Klamath Siskiyou Wildlands Center v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009); *Winnemucca Indian Colony v. United States*, 399 F. App'x. 240, 241–42 (9th Cir. 2010).